IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JESSICA ALBELO, | ) | CASE NO. 1:12 CV 2590 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

# Introduction

**A.    Nature of the case and proceedings**

Before me[1] is an action by Jessica Albelo[2] under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits.[3] The Commissioner has answered[4] and filed the transcript of the administrative record.[5] Pursuant to my initial[6] and procedural[7] orders, the parties have

---

[1] ECF # 11. The parties have consented to my exercise of jurisdiction.

[2] The claimant is identified in this appeal as Jessica Albelo, and in the ALJ's opinion as Jessica Lugo. She is identified here as Albelo.

[3] ECF # 1.

[4] ECF # 8.

[5] ECF # 9.

[6] ECF # 5.

[7] ECF # 15.

briefed their positions[8] and filed supplemental charts[9] and the fact sheet.[10] They have participated in a telephonic oral argument.[11]

**B.     Background facts and decision of the Administrative Law Judge ("ALJ")**

Albelo, who was 32 years old at the time of the ALJ's decision,[12] has a sixth grade education[13] and previously worked as a supervisor in fast food operations.[14] She contends that she became disabled in 2007 due to a workplace injury to her left shoulder,[15] for which she received workers' compensation benefits for a brief period.[16] The ALJ found that she lives with her husband and their three children.[17]

The ALJ, whose decision became the final decision of the Commissioner, found that Albelo had the following severe impairments: obesity; Type 2 diabetes mellitus; lumbar and

---

[8] ECF # 22 (Commissioner's brief); ECF # 21 (Albelo's brief).

[9] ECF # 22-1 (Commissioner's charts); ECF # 21-1 (Albelo's charts).

[10] ECF # 14 (Albelo's fact sheet).

[11] ECF # 25.

[12] Transcript ("Tr.") at 31.

[13] *Id.*, 64.

[14] *Id.* at 63-64.

[15] *Id.* at 58.

[16] *Id.* at 174.

[17] *Id.* at 26. Although this is the finding of the ALJ, the record contains references to Lugo being single, and not married (*see, id.* at 325), and having five children, not three (*Id.* at 349).

cervical degenerative disc disease, with radiculopathy and mild canal encroachment; a history of rotator cuff tears, status post surgical intervention; a history of right ankle ligament tears, status post surgical intervention; hypertension; arthritis of the left AC joint, with a history of tendinitis; a history of drug addiction; a major depressive disorder; and a panic disorder, with agoraphobia.[18]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Albelo's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant has the residual functional capacity to perform a limited range of light work on a sustained basis. The claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently. She can stand/ walk a total of 6 out of 8 hours, and sit for 6 hours out of 8 hours. The claimant should not climb ladders, ropes, and scaffolds, and can only occasionally use her left upper extremity for reaching. The claimant can perform work that does not require more than superficial interactions with others. She should not work in an environment that requires high production demands or quotas.[19]

The ALJ decided that this residual functional capacity precluded Albelo from performing her past relevant work.[20]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the RFC finding quoted above, the ALJ determined that a significant

---

[18] *Id.* at 23.

[19] *Id.* at 26.

[20] *Id.* at 31.

number of jobs existed locally and nationally that Albelo could perform.[21] The ALJ, therefore, found Albelo not under a disability.[22]

**C.    Issues on judicial review and decision**

Albelo asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Albelo presents the following issues for judicial review:

- The ALJ committed significant error in the identification of plaintiff's severe impairments when she failed to recognize Ms. Albelo's right shoulder impingement and right upper extremity radiculopathy.

- The ALJ's finding that the plaintiff can perform light work is not supported by substantial evidence given the evidence of Ms. Albelo's right ankle impairment.

- The ALJ failed to assign appropriate weight to the opinions of Ms. Albelo's treating physicians and, even though she gave significant weight to Dr. Bohl's opinion, did not include his restrictions in plaintiff's functional capacity assessment.[23]

For the reasons that follow, I will conclude that the ALJ's finding of no disability is not supported by substantial evidence and, therefore, must be reversed.

---

[21] *Id.* at 31-32.

[22] *Id.* at 32.

[23] ECF # 14 at 1.

## Analysis

**A.     Standards of review**

*1.     Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[24]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[25] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[26]

---

[24] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[25] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[26] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

I will review the findings of the ALJ at issue here consistent with that deferential standard.

*2.     Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[27]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[28]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[29] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[30]

---

[27] 20 C.F.R. § 404.1527(d)(2).

[28] *Id.*

[29] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[30] *Id.*

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[31] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[32] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[33] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[34]

In *Wilson v. Commissioner of Social Security*,[35] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[36] The court noted that the regulation expressly contains a "good reasons" requirement.[37] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

---

[31] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[32] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[33] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[34] *Id.* at 535.

[35] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[36] *Id.* at 544.

[37] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[38]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[39] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[40] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[41] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[42]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[43] recently emphasized that the regulations require two distinct analyses, applying two separate

---

[38] *Id.* at 546.

[39] *Id.*

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (2013).

standards, in assessing the opinions of treating sources.[44] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[45] *Blakley v. Commissioner of Social Security*,[46] and *Hensley v. Astrue*.[47]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[48] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[49] These factors are expressly set out in 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (3)-(6) and §§ 416.927(c)(2)(i)-(ii), (3)-(6).[50] The treating source's non-controlling status

---

[44] *Id.* at 375-76.

[45] *Rogers,* 486 F.3d at 242.

[46] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[47] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[48] *Gayheart*, 710 F.3d at 376.

[49] *Id.*

[50] *Id.*

notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[51]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[52] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[53] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(c)(i)-(ii), (3)-(6) of the regulations,[54] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[55] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[56]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.
>
> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[57]

---

[51] *Rogers*, 486 F.3d at 242.

[52] *Gayheart*, 710 F.3d at 376.

[53] *Id.*

[54] *Id.*

[55] *Id.*

[56] *Id.*

[57] *Id.*

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[58] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[59] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[60] or that objective medical evidence does not support that opinion.[61]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[62] The Commissioner's *post hoc* arguments on judicial review are immaterial.[63]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such

---

[58] *Rogers*, 486 F.3d 234 at 242.

[59] *Blakley*, 581 F.3d at 406-07.

[60] *Hensley*, 573 F.3d at 266-67.

[61] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

[62] *Blakley*, 581 F.3d at 407.

[63] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147 (N.D. Ohio Jan. 14, 2010).

weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[64]

- the rejection or discounting of the weight of a treating source without assigning weight,[65]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[66]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[67]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[68] and

---

[64] *Blakley*, 581 F.3d at 407-08.

[65] *Id.* at 408.

[66] *Id.*

[67] *Id.* at 409.

[68] *Hensley*, 573 F.3d at 266-67.

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[69]

The Sixth Circuit in *Blakley*[70] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[71] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[72]

In *Cole v. Astrue*,[73] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[74]

---

[69] *Friend*, 375 F. App'x at 551-52.

[70] *Blakley*, 581 F.3d 399.

[71] *Id.* at 409-10.

[72] *Id.* at 410.

[73] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[74] *Id.* at 940.

**B. Application of standards**

The primary issue raised here concerns the weight given to the opinions of treating and reviewing sources.

***1. Dr. Bohl***

The ALJ gave "significant weight" to three specific "findings and opinions" by Dr. Bohl:[75] (1) Albelo could lift and/or carry 20 pounds occasionally and up to 10 pounds frequently because she experiences "significant pain relief with medication,"[76] (2) she had "arthritis in her left AC joint and tendonitis as well,"[77] and (3) her "ability to do repetitive foot movements is not significantly limited."[78]

Beyond these explicit references and analyses, the Commissioner argues that the ALJ surely must have considered Dr. Bohl's opinion that Albelo would be unable to do any overhead work or any heavy work with her left hand when the ALJ included, without reference to Dr. Bohl, the limitation in the RFC that [Lugo] could "only occasionally use her left upper extremity for reaching."[79] Any failure to fully adopt this opinion of Dr. Bohl can now be explained, the Commissioner asserts, by observing that the medical evidence, as a

---

[75] Tr. at 30 (citing record).

[76] *Id.* at 28 (citing record).

[77] *Id.* at 29 (citing record).

[78] *Id.* (citing record).

[79] ECF # 22 at 13 (citing RFC).

-14-

whole, does not support it.[80] Similarly, the Commissioner contends that the ALJ did not adopt Dr. Bohl's limitation as to standing and sitting because it was inconsistent with the medical evidence showing that Albelo's right ankle sprain was repaired surgically.[81]

The ALJ here did specifically discuss the medical evidence concerning Albelo's left shoulder, observing initially that there was evidence of a rotator cuff tear with limited range of motion in the medical records from early 2006, but then noting that a 2008 x-ray documented only mild degenerative changes with any pain being successfully managed with medication.[82] Moreover, the ALJ also specifically analyzed the issue of Albelo's right ankle, finding that Albelo's 2009 surgery on that ankle resulted in post-surgical infections that required "multiple rounds of antibiotic treatment and physical therapy" but concluding that "despite the lengthy time it took [Albelo] to heal from her ankle surgery, by 2010, [Albelo's] range of motion in her ankle was within normal limits and her surgical wound was healed" – a view the ALJ explicitly noted was consistent with Dr. Bohl's opinion as to Albelo's ability to do repetitive foot movements.[83]

These discussions, which are contained within the ALJ's own opinion and supported by citations to specific portions of the record, go toward setting forth good reasons for not adopting the opinions of Dr. Bohl in their entirety. Far more than mere conclusory

---

[80] *Id.* at 15.

[81] *Id.*

[82] Tr. at 29 (citing record).

[83] *Id.* at 28-29 (citing record).

statements, they are the kind of analysis that has been found to satisfy the goals of the good reasons requirement, in that they provide the basis for meaningful judicial review, even if the actual rubric is not followed. As such, the ALJ's analysis of Dr. Bohl's opinion could fall within one of the three harmless error exceptions to that requirement recognized by the Sixth Circuit.

However, as the parties here seem to acknowledge, the ALJ appears to have misread the evidence pertaining to Albelo's right shoulder as that concerning her left shoulder.[84] Thus, the sequential narrative of the ALJ's opinion – a 2006 rotator cuff injury to the left shoulder which produced limited range of motion even following surgery, followed in 2008 by an x-ray documenting only mild degenerative changes – becomes inaccurate, since the last measurement of a supposed improvement no longer relates to the initial, uncontested evidence of an injury with restrictions on function. As such, although the form of the ALJ's analysis might be acceptable under the analysis set forth above, the content is not, since the reason given is not a "good" reason because it is grounded on a factual mistake about the evidence of record.[85]

---

[84] ECF # 21 at 19; ECF # 22 at 14-15. I note also that the Commissioner conceded the mistake during the oral argument.

[85] *See*, Social Security Ruling No. 96-2p ("good reasons" for discounting the weight given to the opinion of a treating source must be supported by the evidence in the case record).

*2.     Dr. Harris*

Similarly, Albelo argues that the ALJ erred by not analyzing the opinion of Michael Harris, M.D., a treating physician, that Albelo could only perform sedentary work because she was limited to lifting no more than 5 pounds maximum.[86]

The Commissioner does not contest Albelo's observation that the ALJ did not specifically address Harris's findings within the decision itself. Rather, the Commissioner here argues that Dr. Harris's opinion was considered as part of the review of the entire record, and that his opinion that Albelo was only capable of sedentary work was rejected because it was not consistent with the record as a whole.[87]

The ALJ's sole reference to Dr. Harris is in the previously-discussed context of describing Albelo's rotator cuff tear that resulted in limited range of motion even following surgery. The ALJ ascribes both the diagnosis of the tear and the finding of limited range or motion following surgery to Dr. Harris[88] but then, as set forth above, discounts those findings by claiming that a subsequent x-ray shows only mild degenerative changes.[89]

Just as was the case with Dr. Bohl, Dr. Harris's opinions concerning the functional limitations of Albelo's left shoulder cannot be discounted on the basis of findings concerning her right shoulder. Even if, as before, the ALJ can be excused the way the treating physician

---

[86] ECF # 21 at 19 (citing record).

[87] ECF # 22 at 17 (citing record).

[88] Tr. at 29.

[89] *Id.*

analysis was done here on the basis that a meaningful judicial review can be accomplished from this opinion, it cannot be said that the reason given was a good reason. Thus, the matter must be remanded.

### 3. Dr. Medling

Yet again, Albelo contends that the ALJ did not directly consider the opinion of James Medling, Ph. D., her treating psychologist, according to the rules for treating sources. Albelo concedes that the ALJ provided reasons for affording less than controlling weight to the opinion of Dr. Medling, but asserts that the reasons "are faulty and unsupported by the record;"[90] *i.e.*, not good reasons.

As discussed above, deficiencies in setting forth the decision to discount the opinion of a treating source may be excused as harmless error when, among other elements, the ALJ's opinion itself provides a basis for conducting a meaningful judicial review of the decision. In other words, the goals of the good reasons requirement of the treating source rule are met notwithstanding defects in the form of the opinion.

Here, despite some problems with particular pieces of evidence cited by the ALJ, Albelo in effect concedes what the ALJ noted – that she was having only mild mental symptoms by June 2010.[91] While Albelo may be correct that the opinion could have provided a more precise and nuanced accounting of her symptom chronology by crediting Dr. Harris's

---

[90] ECF # 21 at 20-22.

[91] Tr. at 29.

2008 opinion as being true at the time, but then superceded by later improvements,[92] the fact is that the ALJ provided just such a chronology of events, showing continuing improvement in Albelo's mental symptoms from 2007 throughout 2009 and 2010 and documenting that improvement by multiple citations to the record.[93]

That extensive discussion is an ample basis for conducting a meaningful judicial review of the decision to accord Dr. Medling's opinion less than controlling weight and more than adequate to determine that the reasons for so doing were sufficiently good reasons.

## Conclusion

Substantial evidence does not support the finding of the Commissioner that Albelo had no disability. Accordingly, the decision of the Commissioner denying Albelo disability insurance benefits is reversed and the matter remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: March 17, 2014                s/ William H. Baughman, Jr.
                                     United States Magistrate Judge

---

[92] ECF # 21 at 22.

[93] Tr. at 29-30.